UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DERRICK FORD #695732,

        Plaintiff,

v.

BRENDA BUCHANAN,

        Defendant.
_____/

Case No. 2:24-cv-00054

Hon. Robert J. Jonker
U.S. District Judge

### REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant Brenda Buchanan's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies. (ECF No. 20.) Plaintiff has not responded to Defendant's motion for summary judgment.

State prisoner Derrick Adair Ford filed an amended complaint under 42 U.S.C. § 1983 alleging that the sole Defendant – Nurse Practitioner (NP) Buchanan, an employee at the Chippewa Correctional Facility[1] (URF) – violated his Eighth Amendment rights. (ECF No. 10.) Ford alleges that he has experienced pain and suffering, as well as a loss of feeling in his right leg and partial feeling in his left leg. (*Id.*, PageID.11.) Ford says that, at URF, he was given a wheelchair, Tylenol, Advil,

---

[1] Ford is currently confined in the Macomb Correctional Facility. Ford says that his rights are still being violated at his new prison.

Naproxen, and Celebrex to treat his ailments. (*Id.*) Ford says he is still in pain and has been denied surgery, injections for pain, and therapy. (*Id.*) Ford says that NP Buchanan told him that she did not have to help him and took away one of his inhalers. (*Id.*)

Ford says that he did not receive adequate housing or healthcare. (*Id.*, PageID.15.) Ford complains that the showers were too hot, and that cracks in the concrete and mud made it difficult for him to navigate his wheelchair in the winter. (*Id.*) Ford says that when he complained to NP Buchanan that he could not get meals, Buchanan told him to get up and walk. (*Id.*)

NP Buchanan argues that Ford never exhausted his administrative remedies by naming her in a properly exhausted grievance. In the opinion of the undersigned, NP Buchanan has met her burden of establishing that Ford never named her in a properly exhausted grievance before he filed this lawsuit. It is respectfully recommended that the Court grant NP Buchanan's motion for summary judgment and dismiss her from this case.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on

---

2     The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

3

a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on

5

March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

6

after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally

7

> defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV. Analysis

Ford attached some grievance forms that he filed to his amended complaint. It appears that he submitted at least two Step I grievances, but he never exhausted those grievances through the three-step grievance process.

First, Ford submitted a copy of the Step I grievance he filed in URF 23-02-0229-28z or URF 23-12-2238-28e (the grievance number is unclear). (ECF No. 10-1, PageID.28.) That grievance stated:

---

[3]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

8

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step I: 2-1-24  Grievance Identifier: URF 23 12 2228 28E
>
> Name: Derrick Ford  Number: 695732  Institution: URF  Lock Number: M317  Date of Incident: 5-20  Today's Date: 1-30-24
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 5-20 tell know
> If none, explain why. I have been writing kites and going to medical every month for meds that work better housing therapey adaquett treatment + houseing
>
> Deliberate indifferance to my welfare, Housing Med Medical needs my life and safy Subjecting Me to Cruel and unusual punishment inadequett Housing toilets + Showers and chow hall is not for Handy cap people and hard of Hearing people Medical needs are being mest, need meds + Injection + Therapey
> + 42 U.S.C. Sec 1983 - 1997 cA 12132 and Sec 504
>
> Grievant's Signature: Derrick Ford

(*Id.*)

Ford also submitted a copy of the Step I grievance he filed in <u>URF-23-12-2228-28z</u> or <u>URF-23-12-2194-28e</u> (*Id.*, PageID.33.) That grievance stated:

9

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
>
> URF 23 12 2228 28Z   4835-4247 10/94   CSJ-247A
>
> Date Received at Step I: 12-18-23   Grievance Identifier: URF 12 31 21 21 94 28F
>
> Name: Derrick Ford   Number: 695732   Institution: URF   Lock Number: M 317   Date of Incident: 12-th-23   Today's Date: 12-13-23
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 6-21 to know
> If none, explain why: I have been writing kites every Month Sense I got to URF
>
> I have Not recieved Adaquette Medication or treatment for the Pain and weakness in my Limbs and back cant walk any more or sleep or go to eat. I could befoe I got to Prison, My Pain is increasing, Ive Kited And told Medical every Month & more I need better Meds + Therapey
>
> Derrick Ford
> Grievant's Signature

(*Id.*)

Ford also submitted a letter and grievance form directly to the Warden. (*Id.*, PageID.29-30.)

NP Buchanan has, however, shown that Ford failed to properly exhaust his grievance remedies by appealing his grievances through the three-step grievance process.

10

NP Buchanan provided a copy of Ford's MDOC Prisoner Step III Grievance Report, dated May 20, 2024. The report shows that Ford never exhausted a grievance through Step III of the MDOC grievance process during the relevant period:



(ECF No. 20-1, PageID.88.)

As noted above, Ford did not respond to NP Buchanan's motion for summary judgment. Ford used a checkbox form from the Eastern District of Michigan when filing his original complaint. (ECF No. 1.) Ford simply answered "yes" to the question about whether he had filed a grievance (*id.*, PageID.7), but provided no details or attachments. Ford used a standard complaint form from the Western District of Michigan when filing his amended complaint. (ECF No. 10.) His responses on that form provided no additional details. But he did attach the two aforementioned Step I grievance forms. But that is all.

In the opinion of the undersigned, Defendant Buchanan has shown that Ford did not file any grievances related to the claims in this case through Step III of the grievance process, and Ford has done nothing to create a genuine issue of material fact on that point. Accordingly, the undersigned concludes that Buchanan has met

11

her burden of showing that no genuine issue of material fact exists entitling her to judgment.

## V. Recommendation

The undersigned respectfully recommends that this Court grant NP Buchanan's motion for summary judgment and dismiss her without prejudice due to Ford's failure to exhaust his administrative remedies. If the Court accepts this recommendation, the case will be dismissed.

Dated:  October 2, 2024                    /s/ *Maarten Vermaat*
                                           MAARTEN VERMAAT
                                           U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).